*By order of the Bankruptcy Appellate Panel, the precedential effect
of this decision is limited to the case and the parties pursuant
to 6th Cir. BAP LBR 8013-1(b). See also 6th Cir. BAP LBR 8010-1(c).*

File Name: 16b0006n.06

# BANKRUPTCY APPELLATE PANEL

### OF THE SIXTH CIRCUIT

————————

In re:  FOUR WELLS LIMITED (15-8020); CAPITAL L
CORP. (15-8021); CIRCLE T FARM, INC. (15-8022);
T X FOUR HOLDINGS, LLC (15-8023),

                       *Debtors.*

Nos. 15-8020/8021/8022/8023

Appeal from the United States Bankruptcy Court
for the Northern District of Ohio at Akron.
Nos. 14-51269; 14-51270; 14-51272; 14-51273.

Argued:  March 1, 2016

Decided and Filed:  April 12, 2016

Before: HARRISON, PRESTON, and WISE, Bankruptcy Appellate Panel Judges.

————————

## COUNSEL

**ARGUED:**  Michelle DiBartolo-Haglock, THOMAS, TRATTNER & MALONE, LL, Akron,
Ohio, for Appellants.  Evan T. Byron, CHERNETT WASSERMAN, LLC, Cleveland, Ohio, for
Appellee Dollar Bank.  **ON BRIEF:**  Michelle DiBartolo-Haglock, THOMAS, TRATTNER &
MALONE, LL, Akron, Ohio, for Appellants.  Evan T. Byron, R. Scott Heasley, CHERNETT
WASSERMAN, LLC, Cleveland, Ohio, for Appellee Dollar Bank.  Alan J. Statman, William B.
Fecher, STATMAN, HARRIS & EYRICH, LLC, Cincinnati, Ohio, for Appellee Fifth Third
Bank.

————————

## OPINION

————————

    C. KATHRYN PRESTON, Chief Bankruptcy Appellate Panel Judge.  This appeal arises
from the bankruptcy court's orders on the motion of Dollar Bank, Federal Savings Bank ("Dollar
Bank") to dismiss the jointly administered Chapter 11 cases of Four Wells Limited ("Four
Wells"), Circle T Farm, Inc. ("Circle T"), Capital L Corp. ("Capital L"), and T X Four Holdings,

LLC ("TX Four") (collectively, "Debtors").  After a hearing at which the bankruptcy court did not take evidence, the court found that (1) Debtors were chronically late in filing their monthly operating reports and paying their quarterly fees to the United States Trustee; (2) there was no realistic likelihood of reorganization; and (3) Debtors filed and prosecuted their Chapter 11 cases in bad faith.  The bankruptcy court dismissed Debtors' cases, and enjoined Debtors from filing another bankruptcy petition under any chapter of the Bankruptcy Code for a period of one (1) year.  In each of their respective cases, Debtors timely filed a notice of appeal.  For the reasons stated below, the Panel **AFFIRMS** in part, and **REVERSES** in part.

## ISSUES ON APPEAL

The issues on appeal are (1) whether the bankruptcy court erred by not holding hearings on the Chapter 11 Plan and Disclosure Statement in accordance with 11 U.S.C. § 1128 and Federal Rule of Bankruptcy Procedure 3017; (2) whether the bankruptcy court erred in dismissing Debtors' jointly administered Chapter 11 cases under 11 U.S.C. § 1112(b); (3) whether the bankruptcy court erred in determining Debtors had acted in bad faith; and (4) whether the bankruptcy court erred in enjoining Debtors from filing another bankruptcy petition for a period of one (1) year.

## JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit (the "Panel") has jurisdiction to decide this appeal.  The United States District Court for the Northern District of Ohio has authorized appeals to the Panel, and no party has timely elected to have this appeal heard by the district court.  28 U.S.C. § 158(b)(6), (c)(1).  A final order of the bankruptcy court may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1).  For purposes of appeal, a final order "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."  *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (quotation marks and citations omitted).  "An order granting a motion to dismiss a Chapter 11 case for cause is final for purposes of appeal."  *In re Lee*, 467 B.R. 906, 910-11 (B.A.P. 6th Cir. 2012) (citing  *AMC Mortg. Co. v. Tenn. Dep't of Revenue* (*In re AMC Mortg. Co.*), 213 F.3d 917, 920 (6th Cir. 2000).

The issue of whether a bankruptcy court must hold a hearing on a disclosure statement and Chapter 11 plan involve purely questions of law which are reviewed *de novo*. *See Deutsche Bank Nat'l Trust Co. v. Tucker,* 621 F.3d 460 (6th Cir. 2010) (statutory interpretation and application reviewed *de novo*). "Under a *de novo* standard of review, the reviewing court decides an issue independently of, and without deference to, the trial court's determination." *Menninger v. Accredited Home Lenders* (*In re Morgeson*), 371 B.R. 798, 800 (B.A.P. 6th Cir. 2007). Essentially, the reviewing court decides the issue "as if it had not been heard before." *Mktg. & Creative Solutions, Inc. v. Scripps Howard Broad. Co.* (*In re Mktg. & Creative Solutions, Inc.*), 338 B.R. 300, 302 (B.A.P. 6th Cir. 2006) (citation omitted).

Rulings on motions to dismiss a bankruptcy case and whether to bar a debtor from filing a subsequent case are reviewed for an abuse of discretion. *Riverview Trenton R.R. Co. v. DSC, Ltd.* (*In re DSC, Ltd.*)*,* 486 F.3d 940, 944 (6th Cir. 2007); *Cusano v. Klein* (*In re Cusano*), 431 B.R. 726, 730 (B.A.P. 6th Cir. 2010). "An abuse of discretion occurs only when the [trial] court relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard." *Kaye v. Agripool, SRL* (*In re Murray, Inc.*), 392 B.R. 288, 296 (B.A.P. 6th Cir. 2008) (quotation marks and citation omitted). "An abuse of discretion is defined as a 'definite and firm conviction that the [court below] committed a clear error of judgment.'" *Mayor of Baltimore v. West Virginia* (*In re Eagle–Picher Indus., Inc.*), 285 F.3d 522, 529 (6th Cir. 2002) (citing *Soberay Mach. & Equip. Co. v. MRF Ltd., Inc.*, 181 F.3d 759, 770 (6th Cir. 1999)). In reviewing a trial court's decision under the "abuse of discretion" standard,"[t]he question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion." *Barlow v. M.J. Waterman & Assocs.* (*In re M.J. Waterman & Assocs.*), 227 F.3d 604, 608 (6th Cir. 2000) (citations omitted).

> The court's findings of fact, including whether the Debtor acted in bad faith, are reviewed under the clearly erroneous standard. *See Alt v. United States (In re Alt),* 305 F.3d 413, 420 (6th Cir. 2002). "A finding of fact is clearly erroneous 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Riverview Trenton R.R. Co. v. DSC, Ltd. (In re DSC, Ltd.),*

486 F.3d 940, 944 (6th Cir. 2007) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)).

*Cusano*, 431 B.R. at 730.

## FACTS

On May 17, 2014, Debtors and Personal Management Group Incorporated ("PMGI") filed their petitions for relief under Chapter 11 of the Bankruptcy Code, in the United States Bankruptcy Court, Northern District of Ohio.[1]  Each Debtor and PMGI are wholly owned by Louis A. Telerico, as trustee of the Louis A. Telerico Amended and Restated Revocable Trust, dated February 1, 2010.  Upon the motion of Debtors and PMGI, the bankruptcy court ordered the joint administration of Debtors' and PMGI's respective cases.[2]

Debtors' core businesses are the acquisition and sale of real estate.  As of the commencement of Debtors' cases, Debtors owned several unique parcels of real estate, all located in Aurora, Ohio: Four Wells owned 206.09 acres of undeveloped land that was zoned as timberland (the "Four Wells Property"); TX Four owned 161.526 acres of developed and undeveloped land that was zoned as residential and agricultural (the "TX Four Property"); Circle T owned 18.39 acres of undeveloped land that was zoned as residential and agricultural (the "Circle T Property"); and Capital L owned 62.66 acres of vacant land (the "Capital L Vacant Property"), and a 19.28 acre parcel of property located at 1340 Page Road, Aurora, Ohio 44202, with a 33,000 square foot retail building (the "Capital L Page Road Property").  The only regular income produced by any Debtor is rental income from the commercial building on the Capital L Page Road Property.  Any other income attributable to Debtors has been from the sale of real estate.  Debtors do not have any employees.

The Four Wells Property, the TX Four Property, the Circle T Property, and the Capital L Vacant Property are all encumbered by a first mortgage held by Dollar Bank, and a second

---

[1] Each separate case was styled as follows: *In re Four Wells Ltd.*, Bankr. Case No. 14-51269; *In re Circle T Farm, Inc.*, Bankr. Case No. 14-51272; *In re Capital L Corp.*, Bankr. Case No. 14-51270; *In re T X Four Holdings, LLC*, Bankr. Case No. 14-51273; and *In re Personal Management Group, Inc.*, Bankr. Case No. 14-51271.

[2] PMGI's Chapter 11 case was dismissed at the same time and under the same circumstances as Debtors' Chapter 11 cases.  The dismissal of PMGI's case, however, was not appealed.

mortgage held by First National Bank ("First National").  The Capital L Page Road Property is encumbered by a first mortgage held by Fifth Third Bank ("Fifth Third"), a second mortgage held by First National, and a judgment lien of Dollar Bank.  As of the petition date, the amount due on the loan secured by the first mortgages and judgment lien of Dollar Bank was approximately $3,117,256.95, the amount due on the loan secured by the mortgage of Fifth Third was approximately $648,148.84, and the amount due on the loan secured by the mortgages of First National was approximately $1,520,363.02.

On May 19, 2014, Debtors filed a motion for use of cash collateral, whereby Debtors sought court authority to use the collateral of Fifth Third - namely, cash on hand, rent, and post-petition proceeds of account receivables generated from the Capital L Page Road Property - to fund business operations (the "Cash Collateral Motion").  On July 25, 2014, the Court entered an agreed order between Debtors and Fifth Third providing for Capital L's interim use of cash collateral to pay certain listed expenses of Capital L's business for the months of June through August, 2014.  On September 11, 2014, Capital L's use of cash collateral was extended by agreed order until the earlier of November 28, 2014, or confirmation of a Chapter 11 plan. Under the terms of both agreed orders, Capital L was to make monthly adequate protection payments to Fifth Third in the amount of $3,980.00.  There is no indication that Capital L defaulted on any such payments.

While the Cash Collateral Motion was pending, Debtors and PMGI, on July 3, 2014, filed separate motions seeking approval of the sale of twelve (12) tracts of the real estate owned by Debtors and PMGI, free and clear of liens pursuant to 11 U.S.C. § 363(f).  Four (4) of the motions sought approval of the sale of subdivided tracts of the Capital L Page Road Property, upon which Fifth Third held the first mortgage (the "Fifth Third Sale Motions"), and the other eight (8) motions related to sales of tracts of property upon which Dollar Bank held the first mortgage (the "Dollar Bank Sale Motions").[3]  Both Dollar Bank and Fifth Third filed omnibus objections to the motions for authority to sell their respective collateral.  Dollar Bank's objection alleged, in part, that the sales proposed in the Dollar Bank Sale Motions did not satisfy any of the

---

[3]One of the Dollar Bank Sale Motions also sought approval of the sale of certain property owned by PMGI. (Bankr. Case No. 14-51269, ECF No. 40).

requirements for sales free and clear of liens under 11 U.S.C. § 363(f), that the sales could leave Dollar Bank without adequate protection with respect to Dollar Bank's remaining collateral, that there was no sound business purpose for the sales, that the sale prices were suspect, and that Debtors lacked good faith because they filed their bankruptcy petitions while a state court foreclosure proceeding was pending. Fifth Third's objection to the Fifth Third Sales Motions echoed many of the same concerns articulated in Dollar Bank's objection; however, Fifth Third's objection was eventually resolved, and the Fifth Third Sale Motions were granted by entry of separate agreed orders.

Prior to the hearing on the Dollar Bank Sale Motions, counsel for Dollar Bank issued subpoenas to each of the proposed purchasers in an attempt to compel the purchasers to appear and testify at a deposition, and to produce any documentation relating to the proposed sale. Debtors filed a motion seeking to quash the subpoenas, alleging that such discovery requests were "plainly nothing but a fishing expedition intended to harass the purchasers of the Debtors' real property and jeopardize the sanctity of the transactions underlying the pending 363 Sale Motions." (Debtors' Mot. for Protective Order at 2, Bankr. Case No. 14-51269, ECF No. 102). After an expedited hearing, the bankruptcy court entered an order granting the motion and cancelling the depositions.

On December 2 and 5, 2014, the bankruptcy court held an evidentiary hearing on the Dollar Bank Sale Motions. After the submission of post-hearing briefs by both parties, the court issued its memorandum decision regarding Dollar Bank Sale Motions on December 24, 2014 (the "Sale Motions Opinion"). (Bankr. Case No. 14-51269, ECF No. 151). With respect to all of the proposed sales, the court found that there was a sound business purpose for the sales, that the sale prices negotiated by Debtors were reasonable and sufficient, and that the evidence introduced at the hearing was insufficient to show that Debtors acted in bad faith in filing their bankruptcy petitions. Seven (7) of the eight (8) Dollar Bank Sale Motions, however, sought to sell a subdivided portion of the Circle T Property, the Four Wells Property, or the TX Four Property that has frontage on the road. The bankruptcy court found persuasive evidence that sale of the frontage portions of the properties would diminish the value of the remainder of each respective property in a liquidation scenario. Thus, the court denied those motions due to

Debtors' failure to establish that Dollar Bank would remain adequately protected after consummation of the sales.  The only sale approved by the court was the sale of a landlocked piece of property owned by PMGI.

Throughout the case, Debtors were continuously late in filing their monthly operating reports:[4] Debtors filed separate monthly operating reports for the months of May and June, 2014 on July 25, 2014.  The July, 2014 monthly operating reports were filed on September 19, 2014. Monthly operating reports for August, 2014 were filed on October 10, 2014.  The September, 2014 monthly operating reports were filed on November 14, 2014.  Separate operating reports for October, November and December, 2014 were all filed on January 23, 2015.  The monthly operating reports for January and February, 2015 were filed on April 3, 2015.  Debtors' last operating reports, for March, 2015 were timely filed on April 10, 2015.

Debtors also sought periodic extensions of the exclusivity periods provided in 11 U.S.C § 1121.  Debtors' first motion to extend the exclusivity periods was filed on September 12, 2014. There was no objection filed by any party in interest, and the bankruptcy court entered an order extending Debtors' exclusive right to file a plan of reorganization and solicit acceptances of the plan to December 13, 2014, and February 11, 2015, respectfully.   On December 12, 2014, Debtors filed their second motion to extend the exclusivity periods.  The court granted Debtors' motion on February 3, 2016, and extended the exclusivity period to file a plan of reorganization until March 13, 2015, and the exclusivity period to solicit acceptances until May 12, 2015. Debtors' final motion to extend the exclusivity periods was filed on March 13, 2015.  On April 3, 2015, Dollar Bank filed an objection to Debtors' motion to extend the exclusivity periods, combined with a motion to covert the cases to Chapter 7, or dismiss the cases with prejudice (the "Dollar Bank Dismissal Motion").  At a hearing on April 7, 2015, the bankruptcy court denied the motion to extend the exclusivity periods, and a hearing was scheduled on the Dollar Bank Dismissal Motion for April 28, 2015.

---

[4]The UST requires that monthly operating reports be filed by the twentieth (20th) day of the month following the month covered by the report. McDermott, D., United States Trustee for Region 9, *Operating Instructions and Reporting Requirements for Chapter 11 Cases* (January 5, 2011), *available at* https://www.justice.gov/sites/default/files/ust-regions/legacy/2011/07/13/oirr_0.pdf.

The Dollar Bank Dismissal Motion sought dismissal or conversion of Debtors' cases pursuant to 11 U.S.C. § 1112(b).  In the motion, Dollar Bank contended that dismissal was appropriate because: (1) Debtors failed to timely file operating reports; (2) although the bankruptcy court had instructed Debtors to cooperate with Dollar Bank as they developed their plans of reorganization,[5] Debtors failed to do so; (3) with respect to each parcel of Dollar Bank's collateral, property taxes were delinquent; (4) there was continuing loss and diminution of the estate due to mismanagement; (5) Debtors failed to timely file Chapter 11 plans, and there was a likelihood that  plans would never be filed; and (6) Debtors acted in bad faith.  Dollar Bank also requested, because of Debtors' bad faith, dismissal of the cases "with prejudice for a sufficient time to allow [Dollar] Bank to exercise its state law rights and remedies."   (Dollar Bank Dismissal Motion at 13, Bankr. Case No. 14-51269, ECF No. 204).  First National and Fifth Third filed responses in support of the Dollar Bank Dismissal Motion, and on April 9, 2015, the United States Trustee (the "UST") filed its own motion to dismiss or convert the cases (the "UST Dismissal Motion") for Debtors' failure to timely file monthly operating reports, and because Circle T and PMGI were delinquent on their UST quarterly fees.  The hearing on the UST Dismissal Motion was set for the same date and time as the Dollar Bank Dismissal Motion.

On April 27, 2015 - the day prior to the hearing on the Dollar Bank Dismissal Motion and the UST Dismissal Motion - Four Wells filed its Disclosure Statement (the "Disclosure Statement") and Chapter 11 Plan (the "Plan").  None of the other Debtors or PMGI filed a plan.[6] The Plan proposed to pay the secured claim of Fifth Third in full through monthly principal and interest payments of $3,980.00 per month for six (6) months, with the final balance due and payable on or before December 1, 2015.  However, it does not appear that Fifth Third is a creditor of Four Wells, or that Fifth Third holds an interest in any property owned by Four Wells, and thus, it is unclear why payments to Fifth Third were proposed under the Plan. The Plan proposed to pay the secured claim of Dollar Bank in full, with interest accruing at a rate of three

---

[5]According to the Dollar Bank Dismissal Motion, at a status hearing held on February 3, 2015, the bankruptcy court instructed Debtors to cooperate with, and provide information to, Dollar Bank and its counsel as Debtors developed their Chapter 11 plans.

[6]The Plan specifically states that it "is proposed by, and applies to Debtor Fours Wells Limited alone." (Plan at 1, Bankr. Case No. 14-51269, ECF No. 226).  According to the Plan, it was "contemplated that the Chapter 11 cases of the remaining Debtors would be dismissed prior to or in conjunction with the Confirmation of the Plan." *Id.*

percent (3%) per annum: Dollar Bank would receive one interim distribution of $45,000.00 within sixty (60) days of the effective date of the Plan, and the balance not later than three (3) years after the effective date of the Plan.  The Plan proposed to pay the secured claim of First National in a fashion identical to that proposed for Dollar Bank.  The Plan proposed to pay claims for property taxes in full, in equal monthly distributions for thirty-six (36) months.  Finally, the Plan proposed a distribution on general unsecured claims of one hundred percent (100%).[7]

The Plan was to be funded by a cash contribution of $150,000.00 from an individual named Mary Gay Krevosh, and proceeds of the sales of the various parcels of real property owned by Debtors.  Other than the sales that had been approved by the court, but not yet consummated, the Plan identified two (2) particular sale transactions as sources of funding: a sale of tracts of the Four Wells Property and TX Four Property, totaling 322 acres of land, for $3,864,000.00 ("Sale A"); and a sale of another tract of the TX Four Property, totaling 25 acres of land with no frontage, for $1,200,000.00 ("Sale B").  The anticipated closing dates for Sale A and Sale B were October 1, 2016, and June 1, 2018, respectively.  The proposed purchasers in Sale A and Sale B were not disclosed in the Plan, and, in the letters of intent regarding Sale A and Sale B, the identities of the purchasers were redacted.  Footnotes to Exhibit "B" to the Plan indicated that the identities of the purchasers were redacted "due to confidentiality provisions and to prevent any interference by the secured lenders."[8] (Plan at Ex. B, Bankr. Case No. 14-51269, ECF No. 226).

On April 28, 2015, the bankruptcy court held a hearing on the UST Dismissal Motion and the Dollar Bank Dismissal Motion (the "Dismissal Hearing").  At the hearing, the UST opted not to prosecute its motion, indicating that Debtors had paid their delinquent UST fees, and filed the outstanding monthly operating reports.  On the Dollar Bank Dismissal Motion, the bankruptcy court heard arguments from counsel for Dollar Bank and counsel for Debtors.  Counsel for Dollar Bank set forth certain facts and circumstances regarding Debtors' cases and Debtors'

---

[7] The Plan indicated that there were no anticipated priority unsecured claimants.

[8] The Plan stated that Four Wells would disclose the identities of the purchasers to the bankruptcy court *in camera*.

conduct, arguing that such facts and circumstances are indicative of bad faith on the part of Debtors.  Counsel for Debtors contested some of the factual allegations articulated by Dollar Bank's counsel, and fielded a lengthy inquiry by the bankruptcy court regarding the proposed Plan, Sale A, and Sale B.  None of the parties, however, presented any testimony, introduced any exhibits, or offered any other evidence in support of their respective positions.[9]

At the conclusion of the hearing, the bankruptcy court issued its findings of fact and conclusions of law on the record.  Concluding that Debtors had acted in bad faith, the bankruptcy court granted the Dollar Bank Dismissal Motion, and enjoined Debtors from refiling a bankruptcy case for a period of one (1) year.  In its ruling, the bankruptcy court stated:

> The Court and parties have waited for months for a plan that justified continuing this case. The Debtors finally filed a plan on the eve of this hearing that's based on the sales of land to undisclosed buyers with a host of conditions, no direct evidence of ability to close, and with projected closing dates that will require the lenders, even in the best of circumstances, to wait years for payment.

> . . .

> The Court is struck by the stubbornness of the Debtor in working privately on this plan without involving the key constituencies, including the First National Bank of Pennsylvania, the one ally it may have had. That may have been a critical mistake.

> This case was hallmarked by a lack of trust, perhaps even paranoia, when it should have been driven by urgency. There appears to be no immediate likelihood of reorganization. All of the primary creditors oppose the plan and oppose continuing the case, with the possible exception of Fifth Third Bank, that does not appear to have an opinion either way.

> The reports and U.S. Trustee fees, while current now, have been chronically late.  Property taxes have remained unpaid. These facts alone appear to be grounds for dismissal under Section 1112. Moreover, the totality of the circumstances illustrate that the prosecution of this case, if not the filing of the case, has been in bad faith in a legal sense.

---

[9]Without making any legal arguments, counsel for First National indicated that his client was disappointed with the Plan as proposed, and advised the court that his client was in favor of dismissal.  Fifth Third's counsel indicated that, although Fifth Third filed a response in support of dismissal, after seeing the Plan, Fifth Third was not taking a position either way.  Counsel for two (2) guarantors of Debtors' obligation to First National indicated that his clients would like to see the case move forward.

> It's essentially a single asset case. There are a few unsecured creditors, no ongoing business or employees. The petition was filed so as to interrupt a foreclosure process, including a motion for summary judgment. It's essentially a two-party dispute, as I mentioned. There is no cash or income to speak of. There is no pressure from other creditors, such as trade creditors, tort plaintiffs, taxing authorities. And as noted, there is really no realistic likelihood of reorganization. The plan was unnecessarily delayed and, when filed, it was too vague and speculative. In my view, in the Court's view, the time for negotiation has passed.

(Tr. of Hr'g Held April 28, 2015 at 52:8 - 54:4, Bankr. Case No. 14-51269, ECF No. 238) ("Tr.").

On May 5, 2015, the bankruptcy court entered its order incorporating the court's findings of fact and memorializing its legal conclusions made at the Dismissal Hearing (the "Dismissal Order"). The Dismissal Order states that, at the Dismissal Hearing, "the creditors presented compelling evidence supporting their position as to why Debtors' case should be dismissed, to which the Debtors has no equally compelling response." (Dismissal Order at 4, Bankr. Case No. 14-51269, ECF No. 229). The court reiterated that it "was deeply troubled by the fact that the Debtors had chosen not to communicate with its creditors, when such communication and negotiation was critical to the confirmation of a plan of reorganization," and further set forth some of the reasons for its decision: (1) that "the Plan and Disclosure Statement lacked substance and failed to assuage one of the most important concerns – whether or not the Debtors could effectively reorganize;" (2) that "Debtors had failed to demonstrate or propose a viable way to finance the Plan;" and that (3) "[a]t the time of the [Dismissal Hearing], the Debtors' case had been pending almost a full year, yet little to no progress had been made towards effectuating a viable plan of reorganization." *Id.* at 1-4. On May 11, 2015, the bankruptcy court entered its Supplemental Order Dismissing Jointly Administered Cases (the "Supplemental Dismissal Order"), thereby clarifying that the Dismissal Order applied to each jointly administered case. Debtors timely filed notices of appeal.

## DISCUSSION

A.     <u>Hearings on Chapter 11 Plan and Disclosure Statement</u>

Relying on 11 U.S.C. § 1128 and Federal Rule of Bankruptcy Procedure 3017, Debtors contend that the bankruptcy court was required to hold an evidentiary hearing on Debtors' Disclosure Statement and Plan, which were both filed the day prior to the Dismissal Hearing, prior to dismissing Debtors' cases.  Debtors additionally assert that the bankruptcy court impermissibly placed the burden to prove good faith and viability of the Plan on Debtors rather than the moving parties.  Alternatively, Debtors assert that, if it is found that the Dismissal Hearing was intended to meet the requirements of § 1128 and Federal Rule of Bankruptcy Procedure 3017, then the bankruptcy court proceeded without due notice required by Rule 3017, and thus violated Debtors' right to due process.  Debtors argue that the Dismissal Order and Supplemental Dismissal Order "should be reversed and this case remanded to afford the Debtors a proper evidentiary hearing on the Disclosure Statement and Plan." (Appellants' Br. at 18, ECF No. 16).  These arguments are without merit.

Section 1128(a) of the Bankruptcy Code provides that "[a]fter notice, the court *shall hold a hearing* on confirmation of a plan." 11 U.S.C. § 1128(a) (emphasis added).  *See also Acequia, Inc., v. Clinton* (*In re Acequia, Inc.*),787 F.2d 1352, 1358 (9th Cir. 1986) ("The bankruptcy court must hold an evidentiary hearing in ruling on confirmation.").  The purpose of the hearing is to determine whether the plan filed in the case meets all of the requirement necessary for confirmation under 11 U.S.C. § 1129.  7 <u>Collier on Bankruptcy</u> ¶ 1128.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2016).  Federal Rule of Bankruptcy Procedure 2002 requires that not less than twenty-eight (28) days' notice of such hearing be given to the debtor, the trustee, all creditors and indenture trustees.  Fed. R. Bankr. P. 2002(b).

Federal Rule of Bankruptcy Procedure 3017 similarly requires the court to hold an actual hearing on a disclosure statement.  That rule provides, in relevant part:

> [A]fter a disclosure statement is filed in accordance with Rule 3016(b),[**10**] the court *shall hold a hearing* on at least 28 days' notice to the debtor, creditors, equity security holders and other parties in interest as provided in Rule 2002 to consider the disclosure statement and any objections or modifications thereto.

Fed. R. Bankr. P. 3017 (emphasis added).  The purpose of a disclosure statement hearing is for the court to determine whether the disclosure statement contains "adequate information," as defined by 11 U.S.C. § 1125(a), with respect to the proposed plan.  Acceptances or rejections of a plan may not be solicited until the disclosure statement is approved by the court as containing "adequate information." 11 U.S.C. § 1125(b).

It is without question that the notice requirements set forth in Federal Rules of Bankruptcy  Procedure 2002 and 3017 were not satisfied prior to the Dismissal Hearing, and therefore, the Dismissal Hearing could not constitute valid hearings on the Disclosure Statement and Plan, as contemplated by Federal Rule of Bankruptcy Procedure 3017 and 11 U.S.C. § 1128.  It is, however, equally without question that a bankruptcy court is not required to hold hearings on a disclosure statement and plan prior to determining whether to dismiss a case under 11 U.S.C. § 1112(b).  Requiring such hearings would contravene the very purpose of dismissal pursuant § 1112(b).

In the *Matter of Woodbrook Assocs.*, 19 F.3d 312 (7th Cir. 1994), the debtor's Chapter 11 case was dismissed upon the motion of the United States Department of Housing and Urban Development ("HUD").  The court found cause existed for dismissal pursuant § 1112(b), and entered an order  dismissing the case prior to the confirmation hearing.  *Id.* at 315.  In addressing whether dismissal of the case was premature, the court stated:

> Nor can Woodbrook win on a claim that dismissal was premature.  *A Chapter 11 case can be dismissed at any time.* Creditors need not wait until a debtor proposes a plan or until the debtor's exclusive right to file a plan has expired.  Creditors, likewise, need not incur the added time and expense of a confirmation hearing on

---

**10**Federal Rule of Bankruptcy Procedure 3016(b) states, in part: "[A] disclosure statement under § 1125 of the Code or evidence showing compliance with § 1126(b) shall be filed with the plan or within a time fixed by the court[.]"  Fed. R. Bankr. P. 3016.

a plan they believe cannot be effectuated.  The very purpose of § 1112(b) is to cut
short this plan and confirmation process where it is pointless.

*Id.* at 317 (emphasis added) (citations omitted).

Notwithstanding, Debtors argue that a bankruptcy court may forgo a hearing on
confirmation of a plan only if the proposed plan is "patently unconfirmable."  Debtors contend
that, because the bankruptcy court did not make such a finding, the court was obligated to hold a
proper hearing to consider confirmation of the Plan.  The cases that Debtors cite in support of
this proposition, however, do not involve a motion for dismissal of a Chapter 11 case for cause
under § 1112(b).  *See In re American Capital Equip., LLC*, 688 F.3d 145, 154 (3rd Cir. 2012)
(holding that confirmation issues under § 1129 may be addressed at the disclosure statement
stage only if the plan is patently unconfirmable); *In re Monroe Well Serv., Inc.*, 80 B.R. 324
(Bankr. E.D. Pa. 1987) (addressing what confirmation issues, if any, may be addressed at the
disclosure statement stage).

Moreover, 11 U.S.C. § 1112(b)(3) requires a bankruptcy court to "commence the hearing
on a motion [to dismiss] not later than 30 days after the filing of the motion and . . . decide the
motion not later than 15 days after commencement of such hearing, unless the movant expressly
consents to a continuance . . . or compelling circumstances prevent the court from meeting [such]
time limits[.]"  11 U.S.C. § 1112(b)(3).  If the Panel was to credit Debtors' theory that the
Bankruptcy Code requires the court to have hearings on the Disclosure Statement and the Plan,
then in instances such as this case — where a disclosure statement and plan are filed after the
motion to dismiss was filed — it would be impossible to comply with both the noticing
requirements for hearings on a disclosure statement and plan set forth in the Bankruptcy Rules,
and the requirements set forth in § 1112(b)(3).[11]  When faced with such a conflict between a
federal rule of bankruptcy procedure and a provision of the Bankruptcy Code, the Code
provision must prevail.  *In re Dow Corning Corp.*, 237 B.R. 374, 378 (Bankr. E.D. Mich. 1999).

---

[11] Under the noticing requirements for hearings on disclosure statements and Chapter 11 plans, absent
unusual circumstances, the quickest a hearing on confirmation of a Chapter 11 plan can occur is sixty-four (64) days
from the date of filing of the disclosure statement.  This calculation includes an additional (3) days to the stated
noticing requirements, as required by Federal Rule of Bankruptcy Procedure 9006(f), and assumes, for the sake of
argument, that (1) the bankruptcy court holds a hearing on the disclosure statement, and issues an order approving
the disclosure statement, the first day after the final day for objections, and (2) parties in interest are served with the
disclosure statement and plan on the day the disclosure statement is approved.

Thus, the bankruptcy court was required to timely consider and dispose of the motion to dismiss. However, because a court "is bound to interpret the Code and Rules harmoniously if it is possible to do so,"[12] the Panel concludes that, although a hearing with due notice may be required prior to denying confirmation for failure to meet the requirements of 11 U.S.C. § 1129 unless the plan is patently unconfirmable, dismissal of a Chapter 11 case in accordance with § 1112(b) may occur at any time, regardless of whether a plan and disclosure statement have been filed, or whether such plan is patently unconfirmable.  Accordingly, the bankruptcy court did not err in failing to hold hearings on the Disclosure Statement and Plan.

B.    Dismissal under 11 U.S.C. § 1112(b)

Section 1112(b) of the Bankruptcy Code provides, in pertinent part:

[O]n request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, *for cause* . . . .

11 U.S.C. § 1112(b)(1) (emphasis added).  Whether cause exists to dismiss a case under § 1112(b) is a question "left to the sound discretion of the bankruptcy court."  *In re Miell*, 419 B.R. 357, 366 (Bankr. N.D. Iowa 2009) (quoting *In re New Towne Dev., LLC*, 404 B.R. 140, 146 (Bankr. M.D. La. 2009)).  "[T]he decision to dismiss the case will be upheld unless it was an abuse of discretion, defined as 'a definite and clear conviction that the trial court committed a clear error of judgment.'" *AMC Mortg. Co., Inc. v. Tenn. Dep't of Revenue* (*In re AMC Mortg. Co., Inc.*), 213 F.3d 917, 920 (6th Cir. 2000) (quoting *Bowling v. Pfizer, Inc.,* 102 F.3d 777, 780 (6th Cir. 1996)).

The determination of cause for dismissal under § 1112(b) involves a "case-specific factual inquiry which focuses on the circumstances of each debtor." *In re Creekside Senior Apartments, L.P.*, 489 B.R. 51, 60 (B.A.P. 6th Cir. 2013) (internal quotation marks omitted) (quoting *United Savs. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.* (*In re Timbers of Inwood Forest Assocs., Ltd.*), 808 F.2d 363, 371-72 (5th Cir. 1987)).  The party seeking

---

[12] *In re Dow Corning Corp.*, 237 B.R. at 378 (citing *In re Staub*, 208 B.R. 602, 606 (Bankr. S.D. Ga. 1997)).

dismissal bears the burden of proving by a preponderance of the evidence that cause exists for dismissal of a debtor's bankruptcy case. *Matter of Woodbrook Assocs.*, 19 F.3d 312, 317 (7th Cir. 1994). "Of course, *neither statements of counsel nor exhibits to a brief* are evidence unless expressly stipulated as admissible evidence." *Neilsen v. DLC Inv., Inc.* (*In re Nielsen*), 211 B.R. 19, 22 n.3 (B.A.P. 8th Cir. 1997) (emphasis added). A bankruptcy court, however, "may take judicial notice of the docket in [the] case and the content of the bankruptcy schedules for the purpose of ascertaining the timing and status of events in the case and facts not reasonably in dispute." *In re Gordon-Brown*, 340 B.R. 751, 753 n.2 (Bankr. E.D. Pa. 2006) (citing Fed. R. Evid. 201).

In the instant case, none of the parties presented testimony, introduced and/or obtained admission of any exhibits, or offered any other evidence at the Dismissal Hearing. Thus, it must be determined whether cause for dismissal could be established, by a preponderance of the evidence, based upon the facts subject to judicial notice.

1.   *Cause for Dismissal under 11 U.S.C. § 1112(b)(4)*

Section 1112(b)(4) provides a non-exhaustive list of examples of "cause" for dismissal of a Chapter 11 case. That section provides, in part, that "the term 'cause' includes – failure timely to provide information or attend meetings reasonably requested by the United States trustee[.]" 11 U.S.C. § 1112(b)(4)(H). The UST's requirement that debtors-in-possession file monthly operating reports is encompassed by this subsection, and bankruptcy courts routinely hold that a debtor's failure to comply with such reporting requirements constitutes cause for dismissal. *See, e.g., In re Rondaxe Props., LLC*, No. 15-20222, 2015 WL 6956521, at *2 (Bankr. W.D.N.Y. June 30, 2015) (citing the debtor's failure to file monthly operating reports as cause for dismissal pursuant to § 1112(b)(4)(H)); *Serron Invs., Inc. v. Pacifica L22* (*In re Serron Invs., Inc.*), No. 11-1625, 2012 WL 2086501, at *6 (B.A.P. 9th Cir. June 8, 2012) (same); *In re GEL, LLC*, 495 B.R. 240, 245 (Bankr. E.D.N.Y. 2012) (same).

Section 12 of the UST's Operating Instructions and Reporting Requirements for Chapter 11 Cases requires a debtor-in-possession to file monthly operating reports by the twentieth (20th) day of the month following the month covered by the report. McDermott, D., United States

Trustee for Region 9, *Operating Instructions and Reporting Requirements for Chapter 11 Cases* (January 5, 2011). The reports serve an important purpose: they allow the UST and parties in interest to monitor a debtor's financial performance, activities and operations. Debtors were consistently late in filing their operating reports: As detailed above, the only monthly operating reports that were filed timely were the March, 2015 reports. The operating reports for May, October, and November, 2015, and January, 2016, were all filed over a month late, and Debtors offered no excuse for their failure to comply with the filing deadlines. Thus, although the monthly operating reports were current as of the Dismissal Hearing, the bankruptcy could properly conclude that Debtors' continuous failure to adhere to the UST's reporting deadlines constituted cause for dismissal of Debtors' bankruptcy cases within the meaning of § 1112(b)(4)(H).

Nonetheless, Debtors maintain that Dollar Bank did not meet its burden of proving cause for dismissal based on Debtors' failure to timely file monthly operating reports. Debtors base this contention on the language of 11 U.S.C. § 1112(b)(4)(F), which states that "cause" includes the "*unexcused* failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter." 11 U.S.C. § 1112(b)(4)(F) (emphasis added). Debtors therefore argue that, because there was no evidence that their failure to timely file operating reports was unexcused, the court erred in determining that cause for dismissal existed based on such facts. However, while an unexcused failure to timely file operating reports may implicate both § 1112(b)(4)(F) and (H),[13] subsection (H) does not require that a debtor's failure be unexcused. Thus, despite the lack of evidence presented at the Dismissal Hearing, the bankruptcy court could properly find cause for dismissal based on § 1112(b)(4)(H).

2. <u>Bad Faith as Cause for Dismissal</u>

Although a debtor's bad faith is not included in the non-exhaustive list of "cause" under § 1112(b)(4), it is well settled in the Sixth Circuit that a debtor's bad faith constitutes cause for dismissal under § 1112(b)(1). *Trident Assocs. Ltd. P'ship v. Metro. Life Ins. Co.* (*In re Trident*

---

[13]The Panel notes that some cases cite to both subsection (F) and (H) of § 1112(b)(4) when determining that cause for dismissal or conversion of a Chapter 11 case exists for a debtor's failure to timely file operating reports. *See In re Tucker, Jr.*, 411 B.R. 530, 535 (Bankr. S.D. Ga. 2009).

*Assocs. Ltd. P'ship*), 52 F.3d 127, 130 (6th Cir. 1995); *Mich. Nat'l Bank v. Charfoos* (*In re Charfoos*), 979 F.2d 390, 392 (6th Cir. 1992).  No single test exists for determining whether a debtor has acted in bad faith.  *In re Lee*, 467 B.R. 906, 917 (B.A.P. 6th Cir. 2012) (citing *Trident Assocs.*, 52 F.3d at 131).  "Instead, it is a 'fact-specific and flexible determination' that must be made on a case-by-case basis by looking to a totality of the circumstances."  *Id.* at 917-18 (quoting *Alt v. United States* (*In re Alt*), 305 F.3d 413, 419 (6th Cir. 2002)).  Courts have "cautioned that dismissal for lack of good faith 'should be confined carefully and is generally utilized *only in those egregious cases* that entail concealed or misrepresented assets and/or sources of income, lavish lifestyle, and intention to avoid a large single debt based on conduct akin to fraud, misconduct or gross negligence.'" *Charfoos*, 979 F.2d. at 392 (quoting *Indus. Ins. Servs., Inc. v. Zick (In re Zick)*, 931 F.2d 1124,1129 (6th Cir. 1991)) (emphasis added).  A debtor's bad faith at any stage of a Chapter 11 case - at "commencement, during its prosecution, or at confirmation" - is cause for dismissal under § 1112(b).  *In re Alder*, 329 B.R. 406, 410 (Bankr. S.D.N.Y. 2005) (citing *Little Creek Dev. Co. v. Commonwealth Mortg. Corp. (In re Little Creek Dev. Co.*), 779 F.2d 1068, 1071 (5th Cir. 1986)).

The Sixth Circuit Court of Appeals has identified eight (8) factors, none of which is dispositive, that may be probative of an organizational debtor's lack of good faith:

(1) the debtor has one asset;

(2) the pre-petition conduct of the debtor has been improper;

(3) there are only a few unsecured creditors;

(4) the debtor's property has been posted for foreclosure, and the debtor has been unsuccessful in defending against the foreclosure in state court;

(5) the debtor and one creditor have proceeded to a standstill in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford;

(6) the filing of the petition effectively allows the debtor to evade court orders;

(7) the debtor has no ongoing business or employees; and

(8) the lack of possibility of reorganization.

*Trident Assocs.*, 52 F.3d at 131 (citing *Laguna Assocs. Ltd. P'ship v. Aetna Casualty & Sur. Co.* (*In re Laguna Assocs. Ltd. P'ship*), 30 F.3d 734, 738 (6th Cir.1994)).  Additional factors that other courts have considered include: whether the debtor has filed previous bankruptcy petitions; whether the debtor is generating any cash or income; whether there is pressure from non-moving creditors; whether the case is a two (2) party dispute which can be resolved in pending non-bankruptcy court litigation; and whether the debtor was formed immediately prior to the petition. *Primestone Inv. Partners, L.P. v. Vornado PS, L.L.C.* (*In re Primestone Inv. Partners, L.P.*), 272 B.R. 554, 557 (D. Del. 2002) (citing *In re SGL Carbon Corp.*, 200 F.3d 154, 165 (3rd Cir. 1999)).

In finding bad faith, the bankruptcy court noted the presence of several of the factors listed above: the case is essentially a single asset case; there are few unsecured creditors; there is no ongoing business or employees; the petition was filed so as to interrupt a foreclosure process; the case  essentially involves a two (2) party dispute; there is no cash or income; there is no pressure from other creditors, such as trade creditors, tort plaintiffs, or taxing authorities; and there is no realistic likelihood of reorganization.  Additionally, the bankruptcy court stated in the Dismissal Order that it "was deeply troubled by the fact that the Debtors had chosen not to communicate with its creditors, when such communication and negotiation was critical to the confirmation of a plan of reorganization." (Dismissal Order at 3, Bankr. Case No. 14-51269, ECF No. 229).  Debtors' lack of communication with its creditors was mentioned in the bankruptcy court's oral ruling as well, and it thus appears that substantial weight may have been given to this "fact" in making the determination that Debtors acted in bad faith.  However, due to the lack of evidence introduced at the Dismissal Hearing, some of the bankruptcy court's findings must be disregarded as clearly erroneous.

### (i) Single Asset Case

The bankruptcy court's finding that Debtors' case is a single asset case was clearly erroneous.[14]  The allegation that the case was a single asset case was disputed by Debtors in their

---

[14]Although Debtors' separate cases were only administratively consolidated, in addressing the "bad faith" factors, the bankruptcy court continuously referred to Debtors' "case" (singular), and  appeared to attribute the

response to the Dollar Bank Dismissal Motion, and counsel for Dollar Bank even noted in his argument at the Dismissal Hearing that such fact was in dispute. It appears from the record that Debtors owned (and perhaps still own) several separate and distinct parcels of real estate, and that Capital L operates as a commercial landlord. In fact, the bankruptcy court in the Sales Motion Opinion, described certain separate and distinct parcels of real estate owned by Debtors.[15] Thus, because no contrary evidence was presented at the Dismissal Hearing, the bankruptcy court could not appropriately make a finding that Debtors' cases were essentially a single asset case.

### (ii) No Ongoing Business or Employees

The finding that Debtors have no ongoing business was also unwarranted. Debtors contend that they are in the business of the acquisition and sale of real estate — a position that the bankruptcy court seemingly agreed with in the Sale Motions Opinion[16] — and from the various motions to approve sales of real estate, it appears that Debtors may have continued to operate that business throughout the Chapter 11 case. Furthermore, no party disputes that Capital L was operating as commercial landlord: it had continuing lease agreements, was collecting rents, had a bank account, and continued to maintain the Capital L Page Road Property. As there is no evidence that these businesses had ceased, it was clearly erroneous for the bankruptcy court to conclude that Debtors did not operate an ongoing business. Debtors admit, however, that they do not have employees.

---

business and assets of each Debtor, to Debtors collectively. For purposes of evaluating the bankruptcy court's findings, the Panel will do the same.

[15] In the Sale Motions Opinion, the bankruptcy court labeled 386 acres of vacant land as the "Contiguous Parcels"; the court labeled a separate 25.98 acres of land as the "Landlocked Parcel"; and the court referred to two "Outlying Parcels," which consisted of a 55.08 acre parcel located west of the Landlocked Parcel, and a 7.58 acre parcel of industrial land. (Sale Motions Opinion, Bankr. Case No. 14-51269, ECF No. 151).

[16] When evaluating whether the proposed sales satisfied the "business judgment test," the bankruptcy court noted that Debtors' fundamental business is the acquisition and sale of real estate. (Sale Motions Opinion at 14, Bankr. Case No. 14-51269, ECF No. 151).

### (iii) Petition Interrupted Foreclosure Proceeding

The bankruptcy court's finding that Debtors' petitions for relief interrupted a foreclosure proceeding was not clearly erroneous, as Debtors admitted that a foreclosure proceeding was pending in state court when their bankruptcy cases were filed.

### (iv) Essentially a Two Party Dispute

The dockets in Debtors' cases clearly indicate that the cases involved more than a two (2) party dispute. Dollar Bank was certainly the most aggressive of Debtors' creditors, but, as previously noted, Fifth Third filed an objection to the Fifth Third Sale Motions, and both Fifth Third and First National filed responses in support of the Dollar Bank Dismissal Motion. At the Dismissal Hearing, the bankruptcy court even acknowledged that Debtors' case was not "literally" a two (2) party dispute, but "a dispute between the Debtors on the one hand and their secured lenders with mortgages on the real estate on the other hand." (Tr. at 52:1-4). Secured creditors, however, cannot simply be considered a single "party" for purposes of considering whether a debtor has acted in bad faith. *See Primestone Inv. Partners*, 272 B.R. at 558 (distinguishing the environment present in that case — the debtor owned a single asset and had only one secured creditor — from a case where the debtor's sole asset was an apartment complex encumbered by four mortgages). Moreover, the particular secured creditors in Debtors' case were not even positionally aligned with each other on different matters throughout the case.[17] Thus, Dollar Bank, Fifth Third, and First National were different parties that took different positions, and it was clearly erroneous for the bankruptcy court to conclude that the bankruptcy cases were a two (2) party dispute.

### (v) No Cash or Income

The bankruptcy court found that Debtors generate no cash or income. There was no evidence presented to support this conclusion. In fact, the only evidence in the record is to the contrary; i.e., the parties' agreed orders entered July 25, 2014 and September 11, 2014, addressed

---

[17] For example, First National, as the second mortgage holder, expressly consented to the sales proposed in the Dollar Bank Sale Motions, while Dollar Bank vehemently opposed the sales. (*See* Sale Motions Opinion at 2, Bankr. Case No. 14-51269, ECF No. 151).

the use of Capital L Page Road Property's rental income.  Accordingly, it was clear error for the bankruptcy court to conclude that Debtors generate no income.

### (vi) No Pressure from Other Creditors

The bankruptcy court's determination that there was "no pressure from other creditors, such as trade creditors, tort plaintiffs, [or] taxing authorities" was not clearly erroneous. (Tr. at 53:23-24).  An examination of the dockets in Debtors' cases confirms that no trade creditors, tort plaintiffs or taxing authorities exerted pressure on Debtors, at least in the form of pleadings or other filings in Debtors' bankruptcy cases.  Thus, because the bankruptcy court may take judicial notice of the contents of the case dockets, the court could appropriately make a determination that Debtors faced no pressure from these other types of creditors.

### (vii) No Realistic Likelihood of Organization

At the Dismissal Hearing, Dollar Bank presented no evidence regarding whether Debtors had a realistic likelihood of reorganization.  The bankruptcy court instead conducted a lengthy inquiry of Debtors' counsel regarding the terms of the recently proposed Plan, including the sources of funding for the Plan.  The court found that there was "no direct evidence of [Debtors'] ability to close" the sales that were to fund the Plan.  (Tr. at 52:12-13).  However, by requiring evidence of Debtors' ability to close the sales, as opposed to evidence of Debtors' inability to do so, it appears that the bankruptcy court inappropriately shifted the burden to Debtors to prove that the Plan was feasible.  Furthermore, even if the Plan as filed was not feasible, there was no evidence that Debtors could not propose a feasible and confirmable plan in the future.  Without such evidence, it was clearly erroneous for the bankruptcy court to conclude that Debtors had no realistic likelihood of reorganization.

### (viii) Debtors' Lack of Communication

Although not listed by the Sixth Circuit Court of Appeals in *Trident* as a factor to consider in determining whether a debtor has acted in bad faith, some bankruptcy courts have found that a Chapter 11 debtor's failure to negotiate with its creditors is indicative of a debtor's bad faith.  *See In re Johnson*, 546 B.R. 83, 129 (Bankr. S.D. Ohio 2016) (stating that "[t]he

commencement of a Chapter 11 case should serve as an 'invitation to a negotiation,'" and charging the debtor with bad faith, in part, because the debtor failed to negotiate with his creditors in good faith (footnote omitted)).  However, in this case, the bankruptcy court's finding that Debtors failed to communicate and negotiate with creditors appears to be based upon statements of Dollar Bank's counsel during argument at the Dismissal Hearing.  Furthermore, Fifth Third's counsel admitted to having discussions with Debtors' counsel regarding treatment of Fifth Third's claim in the Plan.  Thus, the bankruptcy court's finding that Debtors had not communicated with its creditors is based on contradictory statements of counsel, not evidence, and is clearly erroneous.

### *(ix) Totality of the Circumstances*

The factors  identified above "cannot simply be mechanically tallied."  *In re Webb MTN, LLC*, No. 07-437, 2008 WL 361402, at *3 (E.D. Tenn. Feb. 8, 2008).  The court charged with analyzing the factors must look at the factors together and determine "whether the petitioner sought 'to achieve objectives outside the legitimate scope of the bankruptcy laws' when filing for protection under Chapter 11."  *Primestone Inv. Partners, L.P. v. Vornado PS, L.L.C. (In re Primestone Inv. Partners, L.P.)*, 272 B.R. 554, 557 (D. Del. 2002) (quoting  *In re SGL Carbon Corp.*, 200 F.3d 154, 165 (3rd Cir. 1999)).  For example,

> the bare fact that the debtor desires to obtain the benefits of [the automatic stay] cannot by itself support a finding of bad faith. Rather, the debtor must intend to obtain the benefit of the automatic stay for an improper purpose, such as merely to frustrate the rights of creditors rather than to reorganize or have an orderly liquidation.

7 Collier on Bankruptcy ¶ 1112.07 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2016) (citing *First Nat'l Bank of Sioux City v. Kerr* (*In re Kerr*), 908 F.2d 400, 404 (8th Cir. 1990)).

Of the factors discussed above, the bankruptcy court could properly consider only the following: Debtors had no employees; Debtors had few unsecured creditors; Debtors' petitions were filed during a foreclosure proceeding; and there was no pressure from other creditors, such as trade creditors, tort plaintiffs, or taxing authorities.  However, without any other evidence suggesting that Debtors sought to abuse the Chapter 11 process, or that Debtors actually abused

the bankruptcy process in prosecuting their Chapter 11 cases, the presence of these few factors alone cannot give rise to a finding of bad faith.

Additionally, in its ruling at the Dismissal Hearing, the bankruptcy court expressed its frustration that "Debtors' case had been pending almost a full year, yet little to no progress had been made towards effectuating a viable plan of reorganization." (Dismissal Order at 3-4, Bankr. Case No. 14-51269, ECF No. 229). However, the bankruptcy court seemed to overlook the fact that much of that year was spent in litigation with Dollar Bank in matters pertaining to the Dollar Bank Sale Motions, which logically needed to be resolved prior to the formulation of a Chapter 11 plan and disclosure statement.[18] Thus, the status of Debtors' case at the one (1) year mark should of had little probative value in the bankruptcy court's determination of whether Debtors acted or were proceeding in bad faith, as there is no evidence to suggest that Debtors delayed filing a plan merely to take advantage of the protections of the Bankruptcy Code.

On a final note, the Panel finds the bankruptcy court's earlier opinion on the Dollar Bank Sale Motions particularly significant. As described above, Dollar Bank's objections to the motions included allegations of bad faith on the part of Debtors. After a two (2) day evidentiary hearing, the bankruptcy court issued its opinion on December 24, 2014, which states, in relevant part:

> [A]lthough Dollar Bank suggests that the Debtors acted in bad faith because they filed their petitions on the eve of a scheduled foreclosure sale, the Court will not find bad faith merely because Debtors exercised their rights under the Bankruptcy Code. A pattern of abusive misuse of process could constitute bad faith provided there was sufficient evidence, *but there was insufficient evidence of bad faith introduced at trial in this case.*

(Sale Motions Opinion at 15, Bankr. Case No. 14-51269, ECF No. 151 (emphasis added)). Yet, a mere four (4) months after issuance of that opinion, and without the submission of any new evidence, the bankruptcy court perplexingly found bad faith at the Dismissal Hearing. While it

---

[18]In their second motion to extend the exclusivity periods provided under 11 U.S.C § 1121, filed December 12, 2014, Debtors indicated that a resolution of the Dollar Bank Sale Motions was required before a plan and disclosure statement could be formulated.

may not be impossible to find bad faith based on facts that are subject to judicial notice,[19] no such facts are present here.

Accordingly, the bankruptcy court's finding of bad faith on the part of Debtors was clearly erroneous. Nonetheless, because the bankruptcy court could appropriately find cause for dismissal under 11 U.S.C. § 1112(b)(4)(H), dismissal of Debtors' cases was not an abuse of discretion unless "unusual circumstances" were illustrated which invoked an exception to dismissal under § 1112(b)(2).

*3.      11 U.S.C. § 1112(b)(2)*

Once a bankruptcy court determines that "cause" exists under § 1112(b)(1), it is under an obligation to dismiss the case, unless the court "identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate," and the debtor establishes that

> (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and

> (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)[20]—

>> (i) for which there exists a reasonable justification for the act or omission; and

>> (ii) that will be cured within a reasonable period of time fixed by the court.

11 U.S.C. § 1112(b)(2). The debtor has the burden to establish that all the factual elements of § 1112(b)(2) exist. *See In re Keeley & Grabanski Land P'ship*, 460 B.R. 520, 536 (Bankr. D.N.D. 2011) ("If cause has been established, the burden shifts to Debtor to prove the case falls within the 'unusual circumstances' exception to § 1112(b)(1)'s mandatory dismissal." (citing *In re Miell*, 419 B.R. 357, 367 (Bankr. N.D. Iowa 2009)). *See also* 7 Collier on Bankruptcy

---

[19] The Panel can envision instances when bad faith could be gleaned from the case docket, such as a case in which the debtor had filed multiple bankruptcy cases, and the debtor never filed schedules and other required documents in any of the cases, or the cases were always filed on the eve of a foreclosure sale.

[20] 11 U.S.C. § 1112(b)(4)(A) provides: "the term 'cause' includes– (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation[.]"

¶ 1112.05 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2016). This typically would be accomplished with a presentation of evidence.

In its ruling, the bankruptcy court did not address whether Debtors established the elements of § 1112(b)(2). However, again, as no evidence was introduced at the Dismissal Hearing by any party, it is without question that Debtors failed to establish the existence of the factual elements of § 1112(b)(2). Thus, the bankruptcy court did not abuse its discretion in dismissing Debtors' cases pursuant to 11 U.S.C. § 1112(b)(1).

C.     The Injunction Against Refiling

Section 349(a) of the Bankruptcy Code provides:

> Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title.

11 U.S.C. § 349(a). Section 109(g) effectively bars a debtor from refiling bankruptcy for 180 days after dismissal, if dismissal was ordered for, or obtained under, one (1) of two (2) listed circumstances, neither of which are present in Debtors' cases. *See* 11 U.S.C. § 109(g).

> Section 109(g) is not, however, a limitation on the bankruptcy court's authority to impose sanctions fashioned to prevent abuse of the bankruptcy system. Where there is sufficient cause, bankruptcy courts have the authority pursuant to 11 U.S.C. §§ 105(a) and 349(a) to prohibit bankruptcy filings in excess of 180 days.

*Cusano v. Klein (In re Cusano)*, 431 B.R. 726, 737 (B.A.P. 6th Cir. 2010). Courts must also be "mindful that sanctions 'must be exercised with restraint and discretion.'" *Id.* at 736 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 111 S. Ct. 2123, 2132 (1991)). *See also Mapother & Mapother, P.S.C. v. Cooper (In re Downs)*, 103 F.3d 472, 478 (6th Cir. 1996) ("The sanction levied must thus be commensurate with the egregiousness of the conduct.").

Sanctions restricting a debtor from filing a subsequent petition for relief under the Bankruptcy Code are generally used to prevent *further* abuse of process by a debtor. *In re Riccardo*, 248 B.R. 717, 724 (Bankr. S.D.N.Y. 2000) ("Such a remedy is most often invoked in

the case of a serial refiler where the abuse of the bankruptcy process typically results in damage primarily to the interests of a single secured creditor."); *Marshall v. McCarty* (*In re Marshall*), 407 B.R. 359, 363 (B.A.P. 8th Cir. 2009) (holding that a debtor's bad faith manipulation of the filing process to avoid strict compliance agreements was sufficient to justify a year long ban on refiling). In Debtors' cases, the bankruptcy court did not specifically identify what conduct of Debtors it was sanctioning; however, because the bankruptcy court could not appropriately find bad faith on the part of Debtors, and there was no evidence that Debtors otherwise abused the bankruptcy process, the bankruptcy court had no basis upon which to sanction Debtors. Thus, in enjoining Debtors from filing another bankruptcy petition for a period of one (1) year, the bankruptcy court abused its discretion.

## CONCLUSION

For the foregoing reasons, the Panel AFFIRMS the bankruptcy court's dismissal of Debtors' jointly administered Chapter 11 cases, and REVERSES and VACATES the bankruptcy court's order to the extent it enjoins Debtors from filing a bankruptcy petition for a period of one (1) year.